UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
------------------------------------------------------------x
STATE   FARM   MUTUAL   AUTOMOBILE
INSURANCE COMPANY,

                Plaintiff/Counter-Defendant,

   -against-

HARANATH POLICHERLA, M.D.,
HARANATH POLICHERLA, M.D., P.C., and
ADVANCED NEURO-REHAB SERVICES, P.C.,

              Defendants/Counter-Plaintiffs.
------------------------------------------------------------x

Case No. 2:08-cv-13939

Judge Nancy G. Edmunds

Magistrate Judge Michael J. Hluchaniuk

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS THE
COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6) OF
THE FEDERAL RULES OF CIVIL PROCEDURE**

Plaintiff, State Farm Mutual Automobile Insurance Company ("State Farm"), by its attorneys, submits the following brief in opposition to Defendants' Motion to Dismiss the Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Motion").

# TABLE OF CONTENTS

Statement of Issue Presented ...................................................................................... iv

Controlling Authorities ................................................................................................ vi

Table of Authorities .................................................................................................... vii

I.      Introduction ..................................................................................................... 1

II.     Statement of Facts ........................................................................................... 1

III.    Argument ......................................................................................................... 2

        A.    Rule 12(g) Prohibits Defendants' Second Motion to Dismiss ............... 2

        B.    The McCarran-Ferguson Act Does not Preempt State Farm's RICO
              Claims ..................................................................................................... 4

              1.    Defendants' Conduct Does Not Constitute the Business of
                    Insurance ....................................................................................... 5

              2.    RICO Does Not Invalidate, Impair or Supersede Any State Law
                    Governing Defendants' Submission of Fraudulent Claims ........... 5

        C.    The Complaint Properly Alleges that Defendants are Each Persons
              Distinct From the RICO Enterprise ........................................................ 9

        D.    The Complaint States a Valid Claim under Section 1962(d) ................. 12

              1.    The Complaint Alleges the Elements of a Claim Under § 1962(d) .......... 12

              2.    The Complaint Properly Alleges a RICO Conspiracy ............................. 13

        E.    Defendants' Arguments Regarding the Statute of Limitations, Collateral
              Estoppel, Federalism, Lack of Reliance, and Waiver All Raise Questions
              of Fact that are Inappropriate in a Motion under Rule 12 and Would Not,
              in Any Event, Justify Dismissal of Any Cause of Action in the Complaint ........ 14

              1.    Defendants Cannot Sustain a Motion to Dismiss based on Facts
                    Outside the Complaint ................................................................. 14

              2.    The Statute of Limitations Does Not Bar State Farm's RICO
                    Claims ......................................................................................... 14

3.    Collateral Estoppel Does Not Justify Dismissal of Any Cause of Action..................................................................................... 17

4.    This Court Should Allow State Farm to Seek a Declaratory Judgment with Respect to All Pending Claims........................................ 20

5.    Defendants Cannot Contest State Farm's Reliance Through This Motion................................................................................................ 23

6.    State Farm Has Not Waived its Right to Recover the Amounts it Paid as a Result of Defendants' Fraud ...................................................... 24

IV.    Conclusion .............................................................................................................. 25

**STATEMENT OF ISSUE PRESENTED**

I.    Does Rule 12(g) of the Federal Rules of Civil Procedure prohibit Defendants from bringing a second Motion to Dismiss pursuant to Rule 12?

    Plaintiff's answer:    Yes
    Defendants' answer:  No

II.    Does the McCarran-Ferguson Act, 15 U.S.C. § 1011, *et seq.*, preempt State Farm's causes of action for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d)?

    Plaintiff's answer:    No
    Defendants' answer:  Yes

III.    Does State Farm's cause of action for violation of RICO, 18 U.S.C. § 1962(c), properly allege an enterprise distinct from the RICO persons?

    Plaintiff's answer:    Yes
    Defendants' answer:  No

IV.    Does State Farm's cause of action for violation of RICO, 18 U.S.C. § 1962(d), state a valid claim?

    Plaintiff's answer:    Yes
    Defendants' answer:  No

V.    Should the Court consider matters outside the Complaint to decide fact-intensive issues raised by Defendants' arguments concerning the statute of limitations, collateral estoppel, federalism, lack of reliance, and waiver?

    Plaintiff's answer:    No
    Defendants' answer:  Yes

VI.    Should the Court entertain a factual dispute regarding the accrual date of State Farm's RICO claims when the claims remain viable under any possible theory and the Complaint pleads that State Farm did not discover its injury until shortly before filing the Complaint?

    Plaintiff's answer:    No
    Defendants' answer:  Yes

VII.    Have Defendants met their burden of demonstrating that all of the elements of collateral estoppel are met despite having failed to identify a single proceeding where any issue in this case was actually raised and litigated?

iv

       Plaintiff's answer:     No
       Defendants' answer:  Yes

VIII.    Should this Court exercise jurisdiction over State Farm's request for a declaratory judgment that is necessary to provide State Farm complete relief from Defendants' fraud and avoid piecemeal litigation?

       Plaintiff's answer:     Yes
       Defendants' answer:  No

IX.    Are State Farm's claims for declaratory judgment and common law fraud subject to dismissal because Defendants disagree with the allegations in the Complaint regarding State Farm's reliance?

       Plaintiff's answer:     No
       Defendants' answer:  Yes

X.    Did State Farm's payment of claims that it did not know were fraudulent constitute a waiver of the right to contest the propriety of those claims?

       Plaintiff's answer:     No
       Defendants' answer:  Yes

## CONTROLLING AUTHORITIES

I.  Fed R. Civ. P. 12(g) and *Swart v. Pitcher*, 9 F.3d 109, 1993 WL 406802 (6th Cir. 1993) bar Defendants' Motion.

II.  *Union Labor Life Ins. Co v. Pireno*, 458 U.S. 119 (1982), *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999), *Brown v. Cassens Transp. Co.*, 546 F.3d 347 (6th Cir. 2009), *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384 (6th Cir. 1996), and *Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co.*, 50 F.3d 1486 (9th Cir. 1995) demonstrate that the McCarran-Ferguson Act does not preempt State Farm's RICO claims.

III.  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) and *Fleischhauer v. Feltner*, 879 F.2d 1290 (6th Cir. 1989) dictate a finding that the Complaint properly alleges an enterprise distinct from the RICO persons.

IV.  *Fleischhauer v. Feltner*, 879 F.2d 1290 (6th Cir. 1989) explicitly rejects Defendants' attack on State Farm's RICO conspiracy claim.

V.  *Kostrzewa v. City of Troy*, 247 F.3d 633 (6th Cir. 2001) confirms the well-known rule that the Court may not consider facts outside the Complaint in deciding a motion to dismiss.

VI.  *Taylor Group v. ANR Storage Co*., 24 Fed. Appx. 319 (6th Cir. Nov. 8, 2001) and *Waltzer v. Transidyne Gen. Corp.*, 697 F.2d 130 (6th Cir. 1983) support rejection of Defendants' statute of limitations argument.

VII.  *United States v. Cinemark USA, Inc.*, 348 F.3d 569 (6th Cir. 2003) and *Spilman v. Harley*, 656 F.2d 224 (6th Cir. 1981) demonstrate that Defendants have failed to meet their burden of proving the elements required for collateral estoppel to apply.

VIII.  *Rivet v. State Farm Mutual Auto. Ins. Co.*, No. 07-1864, 2009 WL 614766 (6th Cir. March 12, 2009) confirms that the Court's exercise of jurisdiction over State Farm's declaratory judgment action is appropriate.

IX.  *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507 (6th Cir. 1999) and *Bass v. Janney Montgomery Scott, Inc.*, 210 F.3d 577 (6th Cir. 2000) definitively hold that reliance is a question of fact for the jury.

X.  *VanBynen v. Burton*, No. 282726, 2009 WL 997303 (Mich. App. April 14, 2009) finds that waiver does not apply where, as here, the party against whom it is asserted was not aware of all material facts.

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Credit Indem. Co. v. Legge*,
  829 F. Supp. 649 (S.D.N.Y. 1993)........................................................16

*Bass v. Janney Montgomery Scott, Inc.*,
  210 F.3d 577 (6th Cir. 2000) .............................................................24

*Brown v. Cassens Transp. Co.*,
  546 F.3d 347 (6th Cir. 2009) ..............................................................6

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001)................................................................... 9, 11-12

*Discon, Inc. v. NYNEX Corp.*,
  93 F.3d 1055 (2d Cir. 1996)......................................................... 11-12

*Dornberger v. Metropolitan Life Ins. Co.*,
  961 F. Supp. 506 (S.D.N.Y. 1997)......................................................9

*Durant v. Servicemaster Co.*,
  159 F. Supp. 2d 977 (E.D. Mich. 2001).............................................10

*Ellis v. Rycenga Homes, Inc.*,
  484 F. Supp. 2d 694 (W.D. Mich. 2007) ...........................................17

*Eva v. Midwest Nat'l Mortgage Banc, Inc.*,
  143 F. Supp.2d 862 (N.D. Ohio 2001)...............................................10

*Fleischhauer v. Feltner*,
  879 F.2d 1290 (6th Cir. 1989) .............................................9-10, 12-13

*Game On Ventures, Inc. v. General RV Center, Inc.*,
  587 F. Supp.2d 831 (E.D. Mich. 2008)..............................................24

*Greenberg v. Life Ins. Co. of Virginia*,
  177 F.3d 507 (6th Cir. 1999) ............................................................24

*Humana Inc. v. Forsyth*,
  525 U.S. 299 (1999)..........................................................................6-8

*In re Managed Care Litig.*,
  135 F. Supp.2d 1253 (S.D. Fla. 2001) ................................................8

*Kenty v. Bank One, Columbus, N.A.*,
   92 F.3d 384 (6th Cir. 1996) ...................................................................4

*Kostrzewa v. City of Troy*,
   247 F.3d 633 (6th Cir. 2001) ................................................................14

*Lugosch v. Congel*,
   No. 00-cv-784, 2002 WL 1001003 (N.D.N.Y. May 14, 2002) ...............17

*Matthews v. Baumhaft*,
   No. 06-11618, 2007 WL 926050 (E.D. Mich. Mar. 28, 2007) ...............14

*Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co.*,
   50 F.3d 1486 (9th Cir. 1995) ..........................................................4-5, 7

*NAACP v. American Family Mut. Ins. Co.*,
   978 F.2d 287 (7th Cir. 1992) ..................................................................7

*Progressive Mich. Ins. Co. v. United Wis. Life Ins. Co.*,
   84 F. Supp.2d 848 (E.D. Mich. 2000).....................................................24

*Rauch v. Day & Night Mfg. Corp.*,
   576 F.2d 697 (6th Cir. 1978) ..................................................................4

*Riverwoods Chappaqua Corp. v. Marine Midland Bank*,
   30 F.3d 339 (2d Cir. 1994)....................................................................11

*Rivet v. State Farm Mut. Auto. Ins. Co.*,
   No. 07-1864, 2009 WL 614766 (6th Cir. March 12, 2009)...........6, 21-22

*Rose v. Mony Life Ins. Co.*,
   No. 99 C 4279, 2000 WL 1898474 (N.D. Ill. Dec. 21, 2000) ...............16

*Scottsdale Ins. Co. v. Roumph*,
   211 F.3d 964 (6th Cir. 2000) ................................................................22

*Spilman v. Harley*,
   656 F.2d 224 (6th Cir. 1981) ................................................................19

*State Farm Mut. Auto. Ins. Co. v. Goldstein*,
   No. 6:03-cv-1645 (M.D. Fla. July 15, 2004) ...........................................9

*State Farm Mut. Auto. Ins. Co. v. Grafman*,
   No. 04-CV-2609 (E.D.N.Y. May 22, 2007) ........................................8, 16

*State Farm Mut. Auto. Ins. Co. v. Kalika*,
   No. 04 CV 4631 (E.D.N.Y. Mar. 16, 2006) .............................................8

*Swart v. Pitcher*,
9 F.3d 109, 1993 WL 406802 (6th Cir. 1993) .......................................................................3

*Taylor Group v. ANR Storage Co.*,
24 Fed. Appx. 319 (6th Cir. Nov. 8, 2001).........................................................................15

*Thiss v. A.O. Smith Corp.*,
No. 1:91:CV:239, 1993 WL 771013 (W.D. Mich. June 29, 1993) ......................................10

*Union Labor Life Ins. Co. v. Pireno*,
458 U.S. 119 (1982)...............................................................................................................5

*United States v. Cinemark USA, Inc.*,
348 F.3d 569 (6th Cir. 2003) ...............................................................................................18

*United States v. Computer Sciences Corp.*,
689 F.2d 1181 (4th Cir. 1982) .............................................................................................13

*United States v. Feldman*,
853 F.2d 648 (9th Cir. 1988) ...............................................................................................11

*Waltzer v. Transidyne Gen. Corp.*,
697 F.2d 130 (6th Cir. 1983) ...............................................................................................16

## State Cases

*Allstate Ins. Co. v. Broe*,
No. 274809, 2008 WL 3876188 (Mich. App. Aug. 21, 2008).........................................7, 24

*Dermatossian v. New York City Transit Auth.*,
67 N.Y.2d 219 (1986) ..........................................................................................................25

*VanBynen v. Burton*,
No. 282726, 2009 WL 997303 (Mich. App. April 14, 2009).................................................25

## Federal Statutes

18 U.S.C. § 1961(4) ..........................................................................................................................13

18 U.S.C. § 1962...................................................................................................................... Passim

**STATE STATUTES**

Mich. Comp. Laws § 500.4501(e) ............................................................................6

Mich. Comp. Laws § 500.4503(c) ............................................................................6

Mich. Comp. Laws § 500.4511(a) ............................................................................6

**RULES**

Fed. R. Civ. Proc. 12 ............................................................................ Passim

## I.      INTRODUCTION

Faced with the Court's denial of their first motion to dismiss, Defendants Haranath Policherla, M.D. ("Dr. Policherla"), Haranath Policherla, M.D., P.C. ("Policherla PC") and Advanced Neuro-Rehab Services, P.C. ("Advanced PC") (collectively, "Defendants") now attack the Complaint on eight new grounds.  Not only is the entire motion procedurally improper under Rule 12(g) of the Federal Rules of Civil Procedure ("Rules"), but Defendants also ignore the basic tenet that a motion to dismiss under Rule 12(b)(6) accepts as true the allegations in the Complaint and cannot rely on factual assertions outside the pleadings.  The only three issues raised in Defendants' motion that are capable of being decided as a matter of law have already been decided contrary to Defendants' position by either the United States Supreme Court or the Court of Appeals for the Sixth Circuit.  Defendants' scattershot approach, therefore, fails to hit a single target.

## II.     STATEMENT OF FACTS

Defendants purported to render neurological evaluations ("Evaluations"), diagnostic tests ("Tests"), and vestibular and physical therapy ("Therapies") to individuals ("Insureds") who were involved in automobile accidents and eligible for insurance coverage under State Farm's policies.  (Compl. ¶ 1.)  The Evaluations, Tests and Therapies were part of a pre-determined fraudulent protocol in which the Evaluations supported a need for Tests, which resulted in the diagnosis of serious medical conditions that did not exist and, in turn, provided justification for the Therapies, which were either not performed, not medically necessary, or performed by individuals who were not appropriately licensed or supervised.  (Compl. ¶ 2.)  Defendants then submitted fraudulent charges for the Evaluations, Tests and Therapies to State Farm and other

insurers, along with false reports, data and notes calculated to induce payment of the claims. (Compl. ¶¶ 4-5.)

State Farm's Complaint alleges four causes of action: (i) a declaratory judgment that Policherla PC and Advanced PC are not entitled to payment for any unpaid charges for the Evaluations, Tests or Therapies, (ii) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), based on each Defendant's participation in conducting the affairs of their association-in-fact enterprise through a pattern of racketeering activity consisting of repeated violations of the mail fraud statute; (iii) RICO conspiracy under 18 U.S.C. § 1962(d), based on allegations that Defendants agreed and conspired to conduct the affairs of the same association-in-fact enterprise through the same pattern of racketeering activity; and (iv) common law fraud based on the fraudulent charges and representations made to State Farm with respect to the Evaluations, Tests and Therapies.

Defendants filed a Motion to Strike and Dismiss Complaint Pursuant to Rules 8(a)(2), 8(d)(1), 10(b) and 12(f) of the Federal Rules of Civil Procedure on December 1, 2008, which this Court denied in its entirety in an Order dated February 26, 2009.

## III.   ARGUMENT

### A.   Rule 12(g) Prohibits Defendants' Second Motion to Dismiss.

Rule 12(g) prohibits the filing of piecemeal motions to dismiss.  Rule 12(g)(2) provides in relevant part:

> Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Rule 12(h), in turn, states that:

> (2)  Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:
>     (A)  in any pleading allowed or ordered under Rule 7(a);

(B)  by a motion under Rule 12(c); or

(C)  at trial.

(3)  If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

Defendants made a prior motion under Rule 12, and now seek to dismiss the Complaint under Rule 12 based on defenses and objections that were equally available to Defendants at the time of the first motion.  Nothing has changed to make the arguments Defendants raise in this Motion more available than they were at the time of Defendants' initial motion, and the exceptions outlined in Rule 12(h)(2) and (3) do not save Defendants' Motion.

Although Defendants creatively title their Motion as if it involves Rule 12(b)(1), which challenges subject matter jurisdiction and would, therefore, trigger the Rule 12(h)(3) exception, Defendants do not make any argument that could possibly deprive the Court of subject matter jurisdiction over this dispute.  The only argument section where Defendants even mention Rule 12(b)(1) pertains to whether the Court should abstain from exercising jurisdiction over the First Cause of Action.  The Court would have jurisdiction over this dispute even if the Court ruled in Defendants' favor on every argument in the Motion because it has both federal question and diversity jurisdiction.  (Compl. ¶ 10.)  The Motion, therefore, does not fall within the Rule 12(h)(3) exception to Rule 12(g).

Moreover, Rule 12(h)(2) does not allow a Defendant to file a second pre-answer motion to argue failure to state a claim or other legal defenses.  "Under Rule 12(h)(2), a party may raise a defense of failure to state a claim upon which relief can be granted, even though not raised in an earlier motion to dismiss, in one of three ways: 1) in an answer, 2) in a motion for judgment on the pleadings, or 3) at trial on the merits."  *Swart v. Pitcher*, 9 F.3d 109, 1993 WL 406802, at *3 (6th Cir. 1993) (unpublished *per curiam* opinion affirming the district court's denial of a second motion to dismiss).  "Rule 12(h)(2) . . . precludes the filing of a second 12(b)(6) motion

3

to dismiss after an initial motion to dismiss." *Id.* (citing *Rauch v. Day & Night Mfg. Corp*., 576 F.2d 697, 701 n.3 (6th Cir. 1978) (subsection (g) "contemplates the presentation of an omnibus pre-answer motion in which defendant advances every available Rule 12 defense and objection he may have.")).    In *Rauch*, the Court explained that Rule 12 is "intended to eliminate unnecessary delays at the pleading stage of a case by avoiding piecemeal consideration of pretrial motions" and that "the only persons to whom Rule 12(g) presents a hazard are motion-minded lawyers who, from force of habit or lack of good faith, cannot close their pleadings or come to issue without attempting to make numerous motions." *Rauch*, 576 F.2d at 701.

The unambiguous language of Rule 12, combined with unequivocal precedent from the Court of Appeals, dictates rejection of Defendants' Motion in its entirety.

### B.    The McCarran-Ferguson Act Does not Preempt State Farm's RICO Claims.

Defendants incorrectly assert that State Farm's RICO claims are preempted by the McCarran-Ferguson Act ("Act"), claiming that application of RICO to recover payments procured through fraud would somehow invalidate, impair or supersede state laws regarding submission and resolution of insurance claims.  (Br. at 3-8.)  Defendants erroneously cite *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 392 (6th Cir. 1996) as providing a three-part test "to determine whether a federal statute affecting insurance is subject to reverse-preemption."  (Br. at 4.)  The three-part test quoted by Defendants only answers the question of whether "RICO will 'invalidate, impair or supersede'" the state insurance code.  *Kenty*, 92 F.3d at 392.  Defendants ignore a critical threshold inquiry that determines if the Act even applies – whether Defendants' conduct at issue "constitutes the business of insurance."  *Id.* at 391; *see also Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co.*, 50 F.3d 1486, 1489 (9th Cir. 1995) (all four factors of a well-settled test, including whether "the acts challenged under the statute constitute the

business of insurance," must be satisfied for the Act to preclude application of a federal statute). The Act does not preclude State Farm's RICO claims because: (1) Defendants' activities do not constitute the business of insurance, and (2) State Farm's RICO claims do not invalidate, impair or supersede any state law which regulates such activities.

### 1.      Defendants' Conduct Does Not Constitute the Business of Insurance.

Submission of fraudulent claims for services that were either not rendered or not medically necessary is not the "business of insurance."  Conduct does not constitute the "business of insurance" simply because it targets insurers or arises in the broad context of insurance.  Rather, the Supreme Court has established three factors that define when the conduct at issue is engaging in the "business of insurance": "*first*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry."  *Union Labor Life Ins. Co.  v. Pireno*, 458 U.S. 119, 129 (1982) (finding that insurer's use of chiropractic peer review to determine whether services were medically necessary did not constitute "business of insurance"); *see also Merchants Home Delivery*, 50 F.3d at 1490-91 (analyzing each type of allegedly fraudulent practice at issue in the Complaint and determining that "collecting money for false claims . . . is not even arguably the business of insurance").  Defendants' submission of fraudulent claims to insurers is not the "business of insurance" and the Act, therefore, does not apply.

### 2.      RICO Does Not Invalidate, Impair or Supersede Any State Law Governing Defendants' Submission of Fraudulent Claims.

State Farm's use of RICO in this case advances Michigan's efforts to combat insurance fraud and does not invalidate, impair or supersede any state law.  The Supreme Court has explained that "[w]hen [a] federal law does not directly conflict with state regulation, and when

application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the [Act] does not preclude its application." *Humana Inc. v. Forsyth*, 525 U.S. 299, 310 (1999).  The *Humana* Court rejected the argument that a RICO claim invalidated or superseded Nevada's insurance statutes because both the RICO statute and Nevada's statutory and common law advanced the same interest in combating insurance fraud. Noting that RICO and Nevada law both allowed private actions to combat fraud, the Court wrote "[b]ecause RICO advances the State's interest in combating insurance fraud, and does not frustrate any articulated Nevada policy, we hold that the [Act] does not block the . . . recourse to RICO in this case." *Id.* at 314.  In providing that rationale, the Court explicitly recognized that insurers, just like State Farm in this case, "have relied on the statute when they were the fraud victims." *Id.*; *accord Brown v. Cassens Transp. Co.*, 546 F.3d 347, 362-63 (6th Cir. 2009) (applying *Humana* to find that RICO did not invalidate, impair or supersede the Michigan Workers' Disability Compensation Act).

State Farm's use of RICO in this action advances Michigan's interest in combating insurance fraud and does not frustrate any Michigan policy.  Michigan law makes it a felony to present to an insurer "any oral or written statement . . . as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains false information concerning any fact or thing material to the claim."  M.C.L. 500.4503(c), 500.4511(a).  Such actions are punishable by imprisonment, a fine, and mandatory restitution to the insurer.  M.C.L. 500.4511(a).  Michigan law also contemplates that insurers will form organizations and establish internal departments "to detect and prevent insurance fraud,"  M.C.L. 500.4501(e), as well as bring causes of action for fraud.  *See, e.g., Rivet v. State Farm Mut. Auto. Ins. Co.*, No. 07-1864, 2009 WL 614766, at *6 (6th Cir. March 12, 2009) (affirming $4.2 million

6

verdict for State Farm based on fraud and fiduciary breach); *Allstate Ins. Co. v. Broe*, No. 274809, 2008 WL 3876188, at **11-12 (Mich. App. Aug. 21, 2008) (affirming $3 million verdict for Allstate where the evidence showed that defendants engaged in a pattern of fraudulent billing).   State Farm's use of RICO in this case, therefore, promotes the state's interest in combating fraud and does not invalidate, impair or supersede Michigan law.

Defendants argue that use of RICO "in the context of the Michigan no-fault system would 'invalidate, impair, or supersede' Michigan's No-Fault Act" because "Michigan's no-fault [sic] establishes the time for and methods of claim dispute resolution" and regulates "the conduct on which Plaintiff's Complaint is based with balanced penalties."   (Br. at 8.)   At its core, Defendants' argument is that insurers who do not discover a health care provider's fraud within the "thirty-day legislative grace period" allowed for payment of claims may not later seek reimbursement for those fraudulent claims because that would "upset the balance of remedies." (Br. at 6-8.)

As an initial matter, the Supreme Court squarely rejected the idea that the Act precludes federal regulation that would upset the balance of remedies in *Humana*. 525 U.S. at 309-10. Noting a split between the Ninth and the Seventh Circuits on one side of the issue and the Eight and the Sixth Circuits on the other, the Court granted *certiorari* to answer the question: "Does a federal law, which proscribes the same conduct as state law, but provides materially different remedies, 'impair' state law under the McCarran-Ferguson Act?"   *Id.* at 305.   Both the Ninth Circuit, in *Merchants Home Delivery,* 50 F.3d at 1492, and the Seventh Circuit in *NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 296-97 (7th Cir. 1992), explicitly rejected the "upset the balance" argument advocated by Defendants.   In deciding that the Act does not preempt federal regulation that "imposes liability additional to, or greater than, state law," the

7

Supreme Court agreed that consideration of the balance of remedies in the state law is not appropriate. *Humana,* 525 U.S. at 300.

Moreover, Defendants cite nothing that would suggest that the Michigan No-Fault Act was intended to "re-balance" the penalties a health care provider faces when committing fraud by immunizing providers who successfully hide their fraud for more than 30 days. Similar issues have been litigated extensively in other jurisdictions, and the rationales offered by those courts apply equally here. In *State Farm Mut. Auto. Ins. Co. v. Grafman*, No. 04-CV-2609 (E.D.N.Y. May 22, 2007) (order granting plaintiff's Motion for Leave to File an Amended Complaint), attached hereto as Exhibit A, the court explained that:

> [B]arring insurers from bringing actions to recoup benefits obtained by fraud would defy logic and public policy. . . . If an insurer could not later bring an action for fraud, wrongdoers would have an incentive to flood insurers with bogus claims and would be unjustly enriched when the insurers found themselves unable to uncover the fraud within the 30-day period. . . . Precluding affirmative fraud claims would undoubtedly result in the public paying higher premiums while individuals who engaged in fraudulent, criminal activity reaped the rewards.

Exhibit A at 22-23. Similarly, in *State Farm Mut. Auto. Ins. Co. v. Kalika*, No. 04 CV 4631 (E.D.N.Y. Mar. 16, 2006) (order denying defendants' Motion to Dismiss (Report & Recommendation of Magistrate Judge Pollack adopted by Judge Anon on March 31, 2006)) attached hereto as Exhibit B , the court found that:

> [t]he policy of ensuring prompt payment or denial of claims in exchange for a reduction in the number of litigation claims filed is not served by allowing fraudulent schemes to be perpetrated without recourse to the insurer seeking reimbursement for claims wrongly paid as a result of fraud and deceit.

Ex. B at 10. The purposes of the Michigan No-Fault Act would be similarly disserved by preventing insurers from using the tools at their disposal to combat insurance fraud. State Farm's use of RICO in this case, therefore, advances rather than impairs the Michigan No-Fault Act. *See In re Managed Care Litig.*, 135 F. Supp.2d 1253, 1260 (S.D. Fla. 2001) ("Defendants

have not convincingly shown that application of the federal RICO statute will significantly impair rather than advance the interests of state insurance laws or that this action will disrupt a state administrative system."); *Dornberger v. Metropolitan Life Ins. Co.*, 961 F. Supp. 506, 519 (S.D.N.Y. 1997) (RICO did not invalidate, impair or supersede New York law even though state law created different remedies because both RICO and state law recognize private actions as a proper means to remedy fraud); *State Farm Mut. Auto. Ins. Co. v. Goldstein*, No. 6:03-cv-1645 (M.D. Fla. July 15, 2004) (order granting declaratory judgment to plaintiff and denying defendants' Motion to Dismiss (adopted and confirmed by District Court Aug. 26, 2004)), attached as Ex. C (finding no preemption because "permitting State Farm to bring a civil action to address what it alleges are false and fraudulent claims submitted to it would not frustrate any declared state policy." (*Id*. at 11)).

### C.    The Complaint Properly Alleges that Defendants are Each Persons Distinct From the RICO Enterprise.

Defendants contend that State Farm's Second Cause of Action, for violation of 18 U.S.C. § 1962(c), should be dismissed due to "insufficient distinctiveness between the alleged enterprise and the alleged RICO person" because the association-in-fact enterprise consists of Dr. Policherla and his two wholly-owned or controlled corporations.  (Br. at 8-12.)  Defendants correctly cite the key Supreme Court case, *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), but then ignore its holding and binding precedent from the Court of Appeals for the Sixth Circuit in favor of cases that address the different scenario of parent and subsidiary corporations.

The Court of Appeals for the Sixth Circuit has addressed and rejected the precise argument raised by Defendants.  In *Fleischhauer v. Feltner*, 879 F.2d 1290 (6th Cir. 1989), plaintiffs alleged that "each of the five defendants was a 'person' and together they formed a

9

racketeering 'enterprise.'"  *Id.* at 1297.  Feltner was an individual defendant and the sole shareholder of all of the defendant corporations.  *Id.* at 1293.  Feltner, exactly like Defendants here, argued that "the 'enterprise' alleged and proven was not sufficiently distinct from the 'person' – in other words, because Feltner owned 100% of the corporations, they were the equivalent of his 'right arm' with whom he could not 'conspire.'"  *Id.* at 1297.  The Court of Appeals found that "[s]uch argument has no merit; the fact that Feltner owned 100% of the corporations' shares does not vitiate the fact that these corporations were separate legal entities."  *Id.*  The Court, therefore, concluded that "the jury had ample basis to find that all defendants were collectively, the 'enterprise.'"  *Id.*[1]

Any potential disagreement with the decision in *Fleischhauer* was put to rest by the Supreme Court in 2001.  In *Cedric Kushner Promotions*, the Court addressed whether a person who is the president and sole shareholder of a closely held corporation is sufficiently distinct from the corporation for the sole shareholder to be the "person" employed by or associated with the "enterprise" corporation for purposes of § 1962(c).  The Court found that the "corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity

---

[1]    Defendants cite *Durant v. Servicemaster Co.*, 159 F. Supp. 2d 977, 981-82 (E.D. Mich. 2001) for the proposition that "[a] RICO enterprise 'cannot merely consist of the named defendants.'" (Br. at 10)  Judge Gadola cited in support of this proposition cases from the Second Circuit and First Circuit that pre-date the Supreme Court's decision in *Cedric Kushner Promotions*.  The parties apparently failed to call to the Court's attention the binding and contrary Sixth Circuit precedent that all defendants can, collectively, constitute the enterprise. *Fleischhauer*, 879 F.2d at 1297.  Other district courts within the Sixth Circuit have acknowledged and followed *Fleischhauer*.  *See, e.g., Thiss v. A.O. Smith Corp.*, No. 1:91:CV:239, 1993 WL 771013, at *9 (W.D. Mich. June 29, 1993) ("the law of this Circuit does not entitle defendants to summary judgment on plaintiff's § 1962(c) claim [because] *Fleischhauer* approved the use of the same entities as both persons and participants in an enterprise" and "stands for the proposition that close ties don't prevent separate legal entities from forming an enterprise"); *Eva v. Midwest Nat'l Mortgage Banc, Inc.*, 143 F. Supp.2d 862, 873-75 (N.D. Ohio 2001) (citing *Fleischhauer* in holding that an enterprise in which each RICO 'person' is one of a number of members of the enterprise is sufficient).

with different rights and responsibilities due to its different legal status" and noted that it could "find nothing in the statute that requires more 'separateness' than that."  *Cedric Kushner Promotions*, 533 U.S. at 158, 163.  Explaining further, the Court observed that "incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers and privileges different from those of the natural individuals who created it, who own it, or whom it employs."  *Id* at 163.  The Court found, therefore, that "the statute requires no more than the formal legal distinction between 'person' and 'enterprise' (namely, incorporation) that is present here."  *Id.* at 165.  *See also United States v. Feldman*, 853 F.2d 648, 656 (9th Cir. 1988) (rejecting defendant's claim that the association-in-fact enterprise he created with corporations he formed was insufficiently separate and distinct, reasoning that "if one corporation possesses an existence separate from its incorporator, clearly a group of corporations formed by a defendant is also distinct.").

In granting *certiorari*, the Court in *Cedric Kushner Promotions* noted a conflict between the Second Circuit, the source of Defendants' cited precedent, and other Circuits, and held that the Second Circuit's interpretation was erroneous.  522 U.S. at 162.  The Court then specifically distinguished both cases relied upon by Defendants – *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir. 1996) and *Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339, 344 (2d Cir. 1994) – in a way that demonstrates why those cases are inapplicable here.  *Id.* at 164.  The Court chose not to evaluate the earlier cases on the merits, but explained that they "involved quite different circumstances" because *Riverwoods* "concerned a claim that a corporation was the 'person' and the corporation, together with all its employees and agents, were the 'enterprise'" and *Discon* involved allegations that corporate subsidiaries were the

11

"persons" and those subsidiaries, taken together with the parent, were the "enterprise."  *Id.*
Cases involving corporate affiliates have nothing to do with the facts alleged in the Complaint.

Here, the association-in-fact enterprise consists of Dr. Policherla, Policherla PC, and
Advanced PC – three legal "persons" who combined to form an enterprise.  Dr. Policherla is the
sole shareholder of Policherla PC, and the Medical Director of Advanced PC.  (Compl. ¶ 16.)
Policherla PC and Advanced PC are not corporate affiliates – neither is a parent or a subsidiary
of each other or anyone else.  Defendants attempt to twist State Farm's allegations describing the
structure and function of the enterprise to negate the legal separateness of Dr. Policherla and the
two corporations, but this ignores the whole concept of distinct legal persons forming an
enterprise.  Defendants chose to structure the enterprise using these distinct legal persons to
commit the fraud.  By using "seemingly independent entities as the vehicles" for submission of
fraudulent claims when all three Defendants were actually joined in purpose and organized to
each fulfill a specific role necessary to facilitate that common purpose, (Compl. ¶ 76),
Defendants made detection of the fraud more difficult and, by doing so, furthered the purpose of
the enterprise.

*Cedric Kushner Promotions* and *Fleischhauer*, therefore, require denial of Defendants'
Motion with respect to the Second Cause of Action.

**D.    The Complaint States a Valid Claim under Section 1962(d).**

**1.    The Complaint Alleges the Elements of a Claim Under § 1962(d).**

Defendants' argument that State Farm failed to plead the essential elements of a claim
under §1962(d) is based solely on a typographical error in which the Third Cause of Action
incorporates, in paragraph 81 of the Complaint, each and every allegation in paragraphs 1
through 70 above, instead of paragraphs 1 through 80 above.  Paragraph 82, however, alleges

that Defendants "knowingly agreed and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Fraudulent Billing Enterprise's affairs." The "Fraudulent Billing Enterprise" is a defined term: "Dr. Policherla, Policherla PC and Advanced PC are an association-in-fact 'enterprise' ('the Fraudulent Billing Enterprise') as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, interstate commerce." (Compl. ¶ 76.)   Paragraph 82, by referring to the Fraudulent Billing Enterprise, alleges the elements Defendants claim are missing – it defines the enterprise, asserts the enterprise's impact on interstate commerce, and identifies the persons associated with the enterprise. (Br. at 13.) To the extent the Court finds this allegation insufficient, State Farm requests permission to correct paragraph 81 to incorporate the allegations in paragraphs 1 through 80 above.

**2.     The Complaint Properly Alleges a RICO Conspiracy.**

Defendants' only substantive argument for dismissal of State Farm's § 1962(d) claim is derived from and mirrors the flawed argument raised with respect to the § 1962(c) enterprise. Defendants assert that Policherla PC and Advanced PC cannot knowingly and willingly become a member of the conspiracy because Dr. Policherla owns or controls both Policherla PC and Advanced PC, and Dr. Policherla cannot conspire with himself. (Br. at 13-14.) The Court of Appeals has already determined that Defendants' argument that because Policherla "owned 100% of the corporations, they were the equivalent of his 'right arm with whom he could not 'conspire' . . . has no merit." *Fleischhauer*, 879 F.2d at 1297.   Moreover, the Court in *Fleischhauer* considered and rejected the only case Defendants cite, *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir. 1982).   *Fleischhauer*, 879 F.2d at 1297. *Fleischhauer* controls and requires denial of Defendants' Motion.

**E.**    **Defendants' Arguments Regarding the Statute of Limitations, Collateral Estoppel, Federalism, Lack of Reliance, and Waiver All Raise Questions of Fact that are Inappropriate in a Motion under Rule 12 and Would Not, in Any Event, Justify Dismissal of Any Cause of Action in the Complaint.**

**1.**    **Defendants Cannot Sustain a Motion to Dismiss based on Facts Outside the Complaint.**

In reviewing a motion to dismiss, this Court may not consider matters beyond the Complaint. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001) (citing 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed. 2000)); *see also Matthews v. Baumhaft*, No. 06-11618, 2007 WL 926050, at **2-3 (E.D. Mich., Mar. 28, 2007) (refusing to examine materials beyond pleadings in considering motion to dismiss because doing so would prematurely convert motion to one for summary judgment while discovery was ongoing).  Thus, to the extent Defendants base their motion to dismiss on grounds that would require this Court to consider facts outside of the Complaint, Defendants' motion should be denied.

**2.**    **The Statute of Limitations Does Not Bar State Farm's RICO Claims.**

Defendants argue that State Farm's Second and Third Causes of Action should be dismissed to the extent they seek recovery based upon reimbursement requests submitted prior to September 11, 2004, because prior claims are barred by RICO's four year statute of limitations. (Br. at 14-17.)  As an initial matter, Defendants' argument, even if it were founded, would not impact the viability of State Farm's RICO claims because there are hundreds of predicate acts that occurred within the four years prior to the filing of the lawsuit.  More importantly, Defendants improperly seek to have this Court decide fact-intensive questions regarding when State Farm's claims accrued based on unsupported factual assertions in Defendants' brief rather than the facts as alleged in the Complaint.

Defendants acknowledge that the "limitations period for RICO claims accrues when a plaintiff knew or should have known of an injury." (Br. at 15 (quoting *Taylor Group v. ANR Storage Co*., 24 Fed. Appx. 319, 325 (6th Cir. Nov. 8, 2001)). The Complaint alleges that, as a result of "defendants' material misrepresentations and other affirmative acts to conceal their fraud from State Farm, State Farm did not discover and should not have reasonably discovered that its damages were attributable to fraud until shortly before it filed this complaint." (Compl. ¶ 70.) Defendants inexplicably claim that this allegation is not sufficient to delay the date on which the statute of limitations begins to run because State Farm does not assert a failure to discover its purported injury. In this case, discovery of the injury and discovery of the fraud are one in the same. Payment of legitimate claims would not cause injury to State Farm. State Farm could not discover its injury without discovering that the claims were fraudulent. Defendants' reference to the Supreme Court's rejection of the "injury and pattern discovery" rule has no bearing here because the Complaint pleads that State Farm discovered the injury, *i.e.* that the claims it had paid were fraudulent, shortly before it filed the Complaint. (Br. at 15.)

In direct contradiction to the allegations in the Complaint, Defendants contend that "State Farm was well aware of its purported injury years before filing the present lawsuit" based on unsupported factual assertions about State Farm's claim handling practices, a single litigated claim, and an unrelated lawsuit against other neurologists in Florida. (Br. at 16.) None of these factual allegations can be considered in a motion to dismiss. Moreover, the facts asserted by Defendants would not justify dismissal of State Farm's claims even if they were true. Defendants' assertions that State Farm denied some of Defendants' requests for reimbursement on the grounds that Defendants were "employing improper billing codes" or other unspecified reasons since January 2002, and "pervasively since approximately January 2008," *id.,* do not

15

contradict State Farm's allegation that it discovered the injury caused by Defendants' fraud shortly before filing the Complaint in September 2008.  In addition, the judgment against State Farm involving the treatment allegedly rendered to Shirley Young occurred because State Farm relied exclusively on an unsuccessful res judicata argument and did not raise a fraud defense. *See Young v. State Farm Mut. Auto. Inc. Co.*, No. 06-627879-NF (3d Cir. Wayne County Ct.), Transcript of Proceedings dated December 7, 2007, attached as Ex. D, at 11:7-12:2 (noting that State Farm's adjuster "never suggested in his deposition that there was an issue with respect to whether the services were reasonable and necessary").  State Farm's failure to allege that Defendants' bills were fraudulent hardly proves State Farm's awareness of Defendants' fraud. Finally, Defendants' assertion that State Farm's knowledge of fraud committed by unrelated neurologists in other states is tantamount to knowledge that Defendants' bills were also fraudulent is absurd.

Application of the RICO statute of limitations involves a fact-intensive inquiry for the jury, and is not an issue to be resolved as a matter of law on a motion to dismiss.  *See Waltzer v. Transidyne Gen. Corp.*, 697 F.2d 130, 133 (6th Cir. 1983) (date of accrual of a cause of action for statute of limitations purposes is a question of fact for the jury); *Rose v. Mony Life Ins. Co.*, No. 99 C 4279, 2000 WL 1898474, at *3 (N.D. Ill. Dec. 21, 2000) (statute of limitations inquiry under RICO is question of fact which "boils down to timing," thus only if the relevant facts are undisputed and only if one conclusion can be drawn is the issue ripe for decision on a motion to dismiss); *Am. Credit Indem. Co. v. Legge*, 829 F. Supp. 649, 650-51 (S.D.N.Y. 1993) (denying motion to dismiss because whether plaintiff should have discovered claims and whether defendants concealed conduct hinged on resolution of factual questions); *Grafman*, Ex. A at 24 (statute of limitations defense raises "fact-sensitive questions and should not be resolved against

plaintiff" in a motion to dismiss); *Lugosch v. Congel*, No. 00-cv-784, 2002 WL 1001003, at *1 (N.D.N.Y. May 14, 2002) (declining to consider defendants' proposed evidence suggesting that claims were outside the statute of limitations where claims were facially within limitations period); *see also Ellis v. Rycenga Homes*, *Inc*., 484 F. Supp. 2d 694, 714-15 (W.D. Mich. 2007) (noting that "existence of unresolved questions of fact renders it impossible to grant a summary judgment for defendant on the ground of the statute of limitations").

Where, as here, State Farm's RICO claims remain viable under every possible theory regarding when the causes of action accrued, it would make no sense for the Court to select an accrual date prior to any development of the facts that are critical to that analysis.  Factual questions surrounding the accrual date could impact the amount of State Farm's damages at trial, but do not justify dismissal of any cause of action in the Complaint.

### 3. Collateral Estoppel Does Not Justify Dismissal of Any Cause of Action.

In arguing that this lawsuit is barred by the doctrine of collateral estoppel, Defendants mischaracterize the Complaint, rely on disputed facts not contained in the Complaint, and fail to meet their burden of demonstrating the existence of the four elements required for application of collateral estoppel in this Circuit.  (Br. at 17-20.)  Yet again, Defendants urge the Court to consider fact-intensive issues without any of the facts that are critical to the analysis.

The Complaint does not, as Defendants argue, contend that "*all* the medical services" rendered by Dr. Policherla were not performed and/or not medically necessary.  (Br. at 17.)  The Complaint alleges that the Evaluations, Tests and Therapies at issue were part of a pre-determined fraudulent protocol designed to support fraudulent charges to State Farm and other insurers for medical services that were never performed or were not medically necessary. (Compl. at ¶¶ 2-3.)  Contrary to Defendants' assertion, State Farm does not seek to recover *all*

the payments it has made to Defendants to date, or a declaratory judgment that it need not pay any requests for reimbursement.  (Br. at 17.)  Rather, State Farm seeks damages resulting from the fraudulent charges and documentation related to the Evaluations, Tests and Therapies, and a declaratory judgment that it does not owe any pending claims for Evaluations, Tests and Therapies.  (Compl. at ¶ 7.)

Defendants' collateral estoppel argument hinges on the mischaracterization of the Complaint as involving *all* services purportedly rendered by Dr. Policherla because, according to Defendants, the allegedly existing judgments requiring State Farm to pay one or more claims made by insureds "defeats this premise."  (Br. at 18-19.)  Not only is Defendants' "premise" inconsistent with the allegations in the Complaint, but the only "judgment" referenced by Defendants does not address any issue raised in the Complaint.   The state court decision involving treatment rendered to Shirley Young denied the purely legal res judicata defense raised by State Farm and did not, in any way, address the issue of whether the bills were fraudulent. Ex. D at 10:10–12:16.  Defendants have not pointed to a single example of State Farm litigating and losing any issue that is actually presented in the Complaint and pending before this Court. Moreover, any such information would be outside the Complaint and inappropriate for consideration in a motion to dismiss.

The Sixth Circuit has established a four-part test for determining whether collateral estoppel bars relitigation of an issue: "1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; 2) determination of the issue must have been necessary to the outcome of the prior proceeding; 3) the prior proceeding must have resulted in a final judgment on the merits; and 4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding."  *United States v.*

*Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003). Moreover, "the person asserting the estoppel has the burden of proving the requirements of estoppel have been met." *Spilman v. Harley*, 656 F.2d 224, 229 (6th Cir. 1981). "If the state record does not show the issue was necessarily and actually litigated in the prior [] proceeding, collateral estoppel is inapplicable." *Id.* Defendants have not demonstrated that any of the elements are met in this case because Defendants have not identified any prior proceeding where an issue in this case was raised and actually litigated.

The Complaint alleges that State Farm justifiably relied on the facially valid documents submitted by Defendants, and that Defendants' material misrepresentations and affirmative acts of concealment prevented State Farm's discovery of Defendants' fraud. (Compl. ¶¶ 69-70.) Contrary to Defendants' illogical argument, State Farm is not collaterally estopped from litigating Defendants' extensive fraud scheme, revealed in patterns that appear through analysis of hundreds of claims, based on alleged judgments in individual claims where fraud was not even raised as a defense by State Farm.

Defendants also cursorily raise two alternate theories: application of collateral estoppel to the extent State Farm seeks recovery of amounts paid for medical services rendered to insureds who obtained judgments against State Farm, and application of the doctrine of accord and satisfaction to the extent State Farm seeks recovery of amounts paid for medical services rendered to insureds with whom State Farm entered into settlement agreements. (Br. at 19-20.) There are no facts before the Court that would allow the Court to make any educated decisions regarding the treatment of the individual claims where there were judgments or settlements, and it would be wholly inappropriate for the Court to accept Defendants' invitation to make a blanket pronouncement at the motion to dismiss stage of this litigation without consideration of any of

the facts necessary to determine whether the required elements are present. All of Defendants'
arguments regarding collateral estoppel and accord and satisfaction are affirmative defenses to be
addressed by the Court when the relevant facts are available, not grounds for dismissal based on
unsupported allegations made on information and belief in Defendants' brief.

> **4.**     **This Court Should Allow State Farm to Seek a Declaratory Judgment
> with Respect to All Pending Claims.**

Defendants argue, based on factual assertions made on information and belief in their
brief, that this Court should decline to exercise jurisdiction over the First Cause of Action with
respect to unpaid claims for reimbursement that are presently pending as part of state court
litigation brought by Insureds. (Br. at 21.) As an initial matter, no facts pertaining to these
alleged state court actions are before the Court. Defendants have presented no information to the
Court regarding the number of allegedly pending claims or the issues being litigated in those
claims. Moreover, even if Defendants' vague assertions regarding these cases were true, there
would be no justification for this Court to abstain from exercising its jurisdiction over State
Farm's request for a declaratory judgment.

Defendants assert, on information and belief, that "a number of the Insureds to whom
Defendants have provided medical services and for which services Defendants have sought and
been refused reimbursement from State Farm have sued State Farm in state court for, among
other things, payment of Defendants' charges for medical services." (Br. at 20.) Such cases are
necessarily very different from the action pending before this Court. Whereas this action seeks a
judgment as to claims submitted by Defendants as a result of Defendants' fraud scheme and
relies on patterns observed in hundreds of Defendants' claims to demonstrate that fraud,
individual lawsuits by Insureds pertain to all benefits with respect to a single person. State Farm
is highly unlikely to have the opportunity in those cases to do discovery or present evidence

regarding the hundreds of other Insureds allegedly treated by Defendants who received identical EMG results, identical and statistically impossible diagnoses, and identical treatment notes with only the names changed. Forcing State Farm to litigate each of Defendants' bills individually would further the fraud because the judge or jury in those cases would be required to decide the validity of the bills in a vacuum based on the limited facts of a single claim rather than taking into account the improbable patterns across the universe of Defendants' claims. This Court is the appropriate forum for State Farm to seek and receive all available relief with respect to Defendants' fraud, including a declaratory judgment with respect to pending claims for the Evaluations, Tests and Therapies.

The Court of Appeals recently confirmed that it is appropriate for the district court to exercise its jurisdiction over a declaratory judgment action that avoids piecemeal litigation of claims that are part of a larger insurance fraud scheme. *Rivet v. State Farm Mut.*, 2009 WL 614766, at *8. In *Rivet*, a State Farm claim representative and an attorney who represented injured parties colluded to defraud State Farm by causing State Farm to enter into settlement agreements that involved unjustified and excessive payments either directly to the attorney or to injured parties who would then endorse the payments to the attorney. *Id.* at *1. State Farm sought damages and a declaratory judgment voiding the settlement agreements the attorney obtained for six of his clients. Three of those clients had claims pending in Michigan state court, and argued that they should be excluded from the declaratory judgment. *Id.* at *7. The Court of Appeals affirmed the district court's exercise of jurisdiction, finding reasonable the district court's assessment that separate actions would "duplicate, if not multiply, the presentation of the evidence," and that "because the damages requested in the fraud claim included only money that State Farm had *already* paid to [the attorney] and his clients, 'the only way to get total relief is

through a declaratory judgment' invalidating future payments." *Id.* at *8. Similarly, the only way for State Farm to get total relief in this case is through a declaratory judgment that it need not pay pending claims for the Evaluations, Tests and Therapies that are the subject of Defendants' fraud.

The Court of Appeals for the Sixth Circuit has repeatedly identified five factors that guide the Court's discretion in exercising jurisdiction over declaratory judgment actions: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory judgment action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000); *Rivet*, 2009 WL 614766, at *7.

Each of these five factors supports the Court's exercise of jurisdiction over State Farm's declaratory judgment action. First, the declaratory judgment action would settle the controversy between State Farm and Defendants, appropriately leaving to the state courts any remaining issues related to other benefits owed to individual insureds. If this Court were to refrain from exercising jurisdiction over the declaratory judgment action, the state courts would render piecemeal, and perhaps inconsistent, decisions regarding what benefits are owed to individual insureds and not resolve State Farm's fraud claims against Defendants. Second, the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue because there would be a definitive ruling as to all pending charges submitted to State Farm by Defendants rather than ongoing, piecemeal litigation. Third, State Farm is not using this action

for 'procedural fencing' or a 'race for res judicata.'   State Farm has a direct dispute with Defendants that should not be litigated in the context of individual insureds seeking payment of benefits.  Fourth, exercising jurisdiction over this matter would not improperly encroach on state jurisdiction because the substantive issues in this case are already before the Court in the RICO counts, and the state courts are only addressing issues specific to each insured.  Fifth, the declaratory judgment sought by State Farm is the best alternative for resolving the dispute over pending claims because the same key facts and patterns are present with respect to the pending claims and the paid claims that are the source of State Farm's damages in the other Causes of Action pending before this Court.

Defendants list similar factors for this Court's consideration, but then offer only conclusory assertions that the state court proceedings address the same issues and facts, a state court is adequate for such adjudication, and usurping the state court's authority after it has already assumed jurisdiction would increase friction and improperly encroach on state jurisdiction.  (Br. at 22-23.)  Defendants have not identified, even generally, any state court proceeding that addresses Defendants' pattern of submitting fraudulent charges and documentation, or any state court judge that has assumed jurisdiction over any controversy between State Farm and Defendants.  Following the factors that guide this Court's limited discretion to abstain from exercising its jurisdiction over State Farm's declaratory judgment action, the Court should find that it is appropriate to exercise jurisdiction over these issues that are integrally related to the other causes of action pending before this Court.

**5.      Defendants Cannot Contest State Farm's Reliance Through This Motion.**

Defendants' assertion that State Farm "never in fact relied to its detriment on the purported misrepresentations of Defendants," (Br. at 24), is directly contrary to the allegations in

the Complaint that State Farm justifiably relied on Defendants' misrepresentations and, as a result, incurred damages of more than $1,000,000.  (*See* Compl. ¶¶ 68-70.)  Reliance is a question of fact that cannot be resolved on a motion to dismiss.  *See Bass v. Janney Montgomery Scott, Inc.*, 210 F.3d 577, 590 (6th Cir. 2000) ("the question of whether [plaintiff's] reliance was reasonable is beyond doubt a question of fact for a jury to decide, and not a fit subject for judgment as a matter of law"); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 516-17 (6th Cir. 1999) (reversing district court's dismissal of fraud claim based on lack of justifiable reliance because the question of justifiable reliance is a fact issue); *Game On Ventures, Inc. v. General RV Center, Inc.*, 587 F. Supp.2d 831, 838 (E.D. Mich. 2008) (whether the plaintiff's reliance was reasonable is a fact question which cannot be determined as a matter of law).  Defendants' only citation, to *Progressive Mich. Ins. Co. v. United Wis. Life Ins. Co.*, 84 F. Supp.2d 848, 854 (E.D. Mich. 2000), is inapposite because it refers to situations "where money has been voluntarily paid with full knowledge of the facts."  The Complaint unequivocally pleads that State Farm incurred over $1,000,000 in damages because it did not have full knowledge of the facts involving Defendants' fraudulent charges and diagnoses.  Defendants cannot dispute those allegations in a motion to dismiss.  *See also Allstate v. Broe*, 2008 WL 3876188 at * 14 (finding that Allstate did not voluntarily pay charges because it made payments to defendants under a mistake of fact induced by fraud).

      **6.**    **State Farm Has Not Waived its Right to Recover the Amounts it Paid as a Result of Defendants' Fraud.**

Defendants argue that State Farm waived any challenge to the claims it paid because State Farm had a right to request reasonable proof and should have conducted an investigation within the thirty days allowed by statute prior to payment.  (Br. at 25.)  It would be contrary to both law and public policy for an insurer's payment of a fraudulent claim within the statutorily

24

required time period to protect the wrongdoer by hindering the insurer's efforts to recover damages caused by fraud.  *See supra* at 8-9; *see also Dermatossian v. New York City Transit Auth.*, 67 N.Y.2d 219, 224-25 (1986) (if the fact that an insurer paid a no-fault claim within 30 days was construed as a waiver by the insurer in a subsequent action, it "would work against the primary purpose underlying the No-Fault Law – to assure claimants of expeditious compensation for their injuries through prompt payment of first-party benefits without regard to fault and without expense to them").  Moreover, waiver does not apply when the party against whom the defense is asserted was not aware of all material facts.  *See, e.g., VanBynen v. Burton*, No. 282726, 2009 WL 997303 at *3 (Mich. App. April 14, 2009) ("[i]t is logically necessary . . . for a party to have full awareness of any material facts in order to make a truly voluntary and intentional decision to waive a right.") (citing *Fitzgerald v. Hubert Herman, Inc.*, 23 Mich. App. 716, 718, (Mich. App. 1970)).  Defendants' waiver argument, therefore, fails as surely as the seven preceding arguments.

**IV.    CONCLUSION**

WHEREFORE, Plaintiff State Farm Mutual Automobile Insurance Company respectfully requests that this Court deny Defendants' Motion in its entirety.

Dated: May 7, 2009                          Respectfully submitted,


By:_____/s/ Jenny Louise Johnson_____
          One of the Attorneys for State Farm
          Mutual Automobile Insurance Company

Morley Witus                              Ross O. Silverman
BARRIS, SOTT, DENN & DRIKER, P.L.L.C.     Jenny Louise Johnson
211 W. Fort St. 15th Floor                Kathy P. Josephson
Detroit, MI 48226-3281                    KATTEN MUCHIN ROSENMAN LLP
313.965.9725                              525 West Monroe Street
                                          Chicago, IL 60661-3693
                                          312.902.5200

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
-----------------------------------------------------------x
STATE   FARM   MUTUAL   AUTOMOBILE
INSURANCE COMPANY,

                    Plaintiff/Counter-Defendant,

-against-

HARANATH POLICHERLA, M.D.,
HARANATH POLICHERLA, M.D., P.C., and
ADVANCED NEURO-REHAB SERVICES, P.C.,

               Defendants/Counter-Plaintiffs.
-----------------------------------------------------------x

Case No. 2:08-cv-13939

Judge Nancy G. Edmunds

Magistrate Judge Michael J. Hluchaniuk

### CERTIFICATE OF SERVICE

      I, Jenny Louise Johnson, hereby certify that on May 7, 2009, I electronically filed the

foregoing paper with the Clerk of the Court using the ECF system, which will send notification

of such filing to the following:

Robert S. Harrison
Matthew D. Klakulak
Robert Harrison & Associates, PC
200 East Long Lake Road, Suite 110
Bloomfield Hills, Michigan 48304

                        Respectfully submitted,


                    By:___/s/ Jenny Louise Johnson_____
                        One of the Attorneys for State Farm
                        Mutual Automobile Insurance Company

Morley Witus
BARRIS, SOTT, DENN & DRIKER, P.L.L.C.
211 W. Fort St. 15th Floor
Detroit, MI 48226-3281
313.965.9725

Ross O. Silverman
Jenny Louise Johnson
Kathy P. Josephson
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661-3693
312.902.5200